**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DISCOVERY REAL ESTATE AND DEVELOPMENT, LLC** | **CIVIL ACTION NO.** |
| | **DISTRICT JUDGE** |
| **VERSUS** | **MAGISTRATE JUDGE** |
| **TOWN OF ST. FRANCISVILLE, ROBERT "BOBEE" LEAKE** | |

## VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION, AND DAMAGES

**NOW INTO COURT**, through undersigned counsel, comes Discovery Real Estate and Development, LLC and submits the following complaint:

### PARTIES

1.

Plaintiff, Discovery Real Estate and Development, LLC ("Discovery"), is a Louisiana limited liability company doing business in West Feliciana Parish, State of Louisiana.

2.

Made defendants here in are:

   a. The **Town of St. Francisville** (the "Town"), a political subdivision located in West Feliciana Parish, Louisiana and

   b. **Mayor Robert "Bobee" Leake** (the "Mayor") in his official capacity as the Mayor of the Town

(collectively "Defendants").

- 1 -

## JURISDICTION AND VENUE

### 3.

Jurisdiction in this Court exists pursuant to 28 U.S.C. section 1331 and section 1343(a) and 42 U.S.C. section 1983 as this is an action arising under the U.S. Constitution.

### 4.

Venue is proper in this Court pursuant to 28 U.S.C. section 1391(b)(2) because a substantial portion of the events giving rise to this claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

### The West Feliciana Parish Comprehensive Plan

### 5.

On December 2, 2008, the West Feliciana Planning and Zoning Commission adopted a comprehensive plan (the "Plan") to guide future development in West Feliciana Parish (the "Parish").[1] The Plan is attached hereto as **Exhibit A**.

### 6.

One of the "core values" of the Plan is a "livable community" with an emphasis on "mixed-use sustainable development with a focus on providing attractive and safe neighborhoods. . . [and to] [p]romote a wider range of housing options." Exhibit A, p. 1. The Plan further encourages the use of the Planned Unit Development zoning tool. *Id*. at p. 20.

### 7.

The Plan specifically recognizes the need for new rental housing:

Based on the population and job forecasts used in the scenario-building process, the parish will have a need for new rental housing priced for low- and very low- income as well as for rentals for higher income households. For ownership households, the

---

[1] The West Feliciana Parish Comprehensive Plan (Dec. 2, 2008), https://westfelicianatogether.frego.com/documents/westfeliciana-comprehensive-plan.pdf (Last visited August 29, 2022).

Parish will need to produce a similar supply of housing across income groups. The mix of housing products will need to vary along the income spectrum. In addition to single-family detached housing, **multifamily units**, townhomes, and cottage-style housing on small lots **will serve lower income residents, seniors, and young families**.

Exhibit A, p. 57 (emphasis added).

8.

The Plan identifies a key policy for the Parish: to use "zoning to create a range of housing types that meet the needs of different segments of the population." According to the Plan:

An important recommendation for the parish includes ensuring **that mixed-use is allowed along appropriate arterials and commercial corridors**. Additionally, the parish could create more compact development types that meet the needs of seniors, young professionals, and growing families.

Exhibit A, p. 59 (emphasis added).

**The Town's Comprehensive Zoning Ordinance Prior to February 2022**

9.

With the Plan in mind, on January 8, 2013, the Town enacted Ordinance 2013-1, which adopted a comprehensive zoning ordinance (the "CZO").

10.

The CZO was revised on March 25, 2014 (Ordinance 2014-1) and on November 10, 2015 (Ordinance 2015-6). The CZO is attached hereto as **Exhibit B**. The stated purpose of the CZO was for the regulated and orderly development of land and land uses within the Town. Exhibit B, Sec. 1.2(A).

11.

The latest revision to the CZO occurred on February 8, 2022, which resulted in major changes to the CZO use districts (Ordinance 2022-1) (the "2022 Changes"). The Town proposed

- 3 -

further changes to the CZO in July 2022 that, if enacted, will result in further major modifications to the CZO.

12.

Prior to the 2022 Changes, the CZO remained largely the same since its enactment in 2013.

13.

According to the CZO, a multi-family dwelling is a building designed for occupancy by three or more families living independently in which they may or may not share common entrances and/or other spaces. Exhibit B, Sec. 2.2.

14.

The CZO provides for certain use districts as follows:

- Residential Large Lot ("RLL),

- Single-Family Residential ("RS-1"),

- Medium-Density Single-Family Residential ("RS-2,

- Multiple-Family Residential ("RM-1"),

- Business Mixed Use ("BMX")

- Commercial Town Center ("CTC"),

- Commercial Highway ("CH"),

- Light Industrial ("LI"),

- Institutional ("IS"), and

- Planned Unit Development ("PUD").

Exhibit B, Sec. 3.4(A).

15.

According to the CZO, the purpose and intent of RM-1 is to

- 4 -

provide opportunities for low- to moderate-density residential neighborhoods with buildings on individual lots or for more than one (1) building on one (1) lot. The RM-1 district shall accommodate single-family residences attached dwellings that have common walls, including townhouses; congregate and other cluster developments, as well as multi-family structures ranging from duplexes to **apartment buildings**

Exbibit B, Sec. 3.8(A) (emphasis added).

16.

Prior to the 2022 Changes, the CZO provided that all "permitted uses of RM-1 shall apply" in CH. *Id*., Sec. 3.11(B)(1); *Id*., Sec. 3.9(B)(1)(a).

**The Development**

17.

Scott Sanchez ("Mr. Sanchez"), a member of Discovery, served on the West Feliciana Economic Development board of directors (the "Board") and St. Francisville Area Foundation ("Foundation"). Through this experience, Mr. Sanchez learned that the Parish had a need for various housing types. Although the Foundation invested resources to promote the development of new housing in the Parish, the investment has not resulted in any new housing developments to date.

18.

Following the failed attempt by the Foundation, Discovery decided to evaluate various housing development options for the Parish.

19.

This evaluation allowed Discovery to identify a 29.857-acre tract of undeveloped, immovable property that offered various zoning to support the development of various housing types (the "Property"). Portions of the Property were zoned RS-2, RM-1, and CH. The Property

has frontage on Commerce Street, Burnett Road, and U.S. Highway 61, which is a four-lane highway.

20.

On March 29, 2018, Discovery purchased the Property, which is centrally located in the Town.  A copy of the Act of Sale was recorded in the mortgage records of West Feliciana Parish on April 2, 2018 in Book 216 Page 879 under File No. 119991. The Act of Sale is attached hereto as **Exhibit C.**

21.

Following the purchase, Discovery hired Urban Design Associates ("Urban") to conduct extensive interviews with key stakeholders in the Parish and Town to develop a master plan for the Property.

22.

After these meetings, Urban issued an overall concept plan for developing the Property in August 2018. The plan is attached hereto as **Exhibit D**.

23.

Thereafter, Discovery hired architects, civil engineers, traffic and drainage engineers, financial advisors, property appraisers, environmental experts, cultural resources experts, retail experts, and multifamily development experts to begin developing the Property.

24.

Upon information and belief, Discovery's plans for the Property were the first and only housing development proposed in the Town since the enactment of the 2013 CZO.

25.

Discovery made the decision to develop the Property in multiple phases and subdivided the Property to accomplish this aim. In the first phase, Discovery developed a 50-lot development featuring single-family homes, cottage homes, and town homes known as the Reserve at Parker District (the "Reserve").

26.

In the second phase, Discovery intends to develop an approximately 13-acre portion of the Property into a multifamily development with supporting commercial space, which will be known as the Parker District – St. Francisville (the "Development").

27.

A set of preliminary architectural plans ("Drawings") for the Development were issued by The Architectural Studio ("Architect") on December 16, 2019. A copy of the Drawings are attached hereto as **Exhibit E**.

28.

As set forth in the Drawings, the Development will offer one, two, and three-bedroom floor plans and commercial space. The Drawings also consider the needs of those with disabilities by making the Development handicap accessible.

29.

Approximately 75% of the Development is zoned as CH and the remainder is zoned as RM-1. As a result, the Property was properly zoned for the Development prior to the 2022 Changes.

PD.39719873.1

30.

Discovery intended to use financing resources for the Development available through the U.S. Department of Housing and Urban Development's 221(D)(4) program. This required Discovery to pay fees that are nonrefundable.

31.

When Discovery started planning for the Reserve and the Development, key stakeholders from the Town, including the long-time Town mayor Billy D'Aquilla ("D'Aquilla") and the Board of Aldermen supported Discovery's intentions for the Property.

32.

In light of appropriate zoning already in place and with the support of key Town stakeholders, Discovery began raising capital for the Reserve and the Development. In order to generate the capital necessary to construct the Development, Discovery and its members disposed of other income-producing properties in the Baton Rouge metropolitan area.

**Events Leading to the 2022 Changes**

33.

In the fall of 2020, the Mayor was elected and succeeded D'Aquilla.

34.

Following the election of the Mayor, community support for the Development suddenly changed.

35.

Unknown to Discovery at the time, on June 8, 2021, the Town extended and amended Ordinance 2021-3 related to the moratorium ("Moratorium") on new developments of any "major subdivision" and new multi-unit residential structures.

PD.39719873.1

36.

A prior iteration of the Moratorium did not include multifamily developments. Upon information and belief, the Moratorium was instituted for the purpose of stopping the Development, the only such known planned project, while more permanent regulations could be put in place to halt multifamily developments.

37.

On July 22, 2021, representatives of Discovery met with the Mayor, Town Manager Laurie Walsh, and Town Attorney Ben Klein to discuss the Moratorium and the Development. Discovery presented information on the Development at the meeting.[2]

38.

According to the Mayor, he believed that the Development was well thought out and that the Development went above and beyond what anyone would expect,[3] but the Mayor expressed a strong prejudice against any development of multifamily housing.[4] The Mayor believed that the Development may bring undesirable people to the Town.

39.

According to the Mayor, he would speak with the Board of Aldermen about the Development, but he mentioned that he did not "know if that's the direction they want with the density with the apartments."[5]

---

[2] The meeting was recorded. After the filing of this Verified Complaint, Discovery will file a motion for leave of court to file to file the recording conventionally. The recording is designated as **Exhibit I**.
[3] Exhibit I, 10:20-38.
[4] Exhibit I, 15:05-15:29.
[5] Exhibit I, 15:9-16.

40.

According to the Mayor,  "What I am gathering is the apartment aspect is not what anybody wants."[6]

41.

The Mayor said that people have "seen the [low-income] apartments adjacent [to the Property]. They've seen the other apartments." The Mayor also mentioned having conversations about having "more apartments in Town and **what that brings**. . ." The Mayor asked, "is it going to attract **the people we want** in St. Francisville?"[7] (Emphasis added).

42.

The Audubon Apartments (the "Audubon"), located at 5180 Burnett Road, are adjacent to the Property where the planned Development will be built. According to data from the U.S. Department of Agriculture, the Audubon has 32 units (comprised of 15 two-bedroom and 17 three-bedroom units). Twenty nine of those units provide affordable housing options through Section 515 Rural Rental Housing and the Section 521 USDA Rental Assistance Program.[8] The former provides options tenancy for very low, low, and moderate income families, elderly persons, and persons with disabilities. The Audubon's participation in the Section 521 program permits certain subsidized renters to pay 30% of their adjusted income towards rent. According to data available from the U.S. Department of Agriculture, 73 tenants of the Audubon are Black and only four (4) are white.[9] Further, eight (8) tenants are considered disabled. The Audubon Apartments have been described online as the "[t]rue definition of 'The Hood.'"

---

[6] Exhibit 1, 15:50-16:00.
[7] Exhibit I, 16:50-18:00.
[8] USDA Rural Development Datasets, Multi-Family Housing 514 & 515, https://www.sc.egov.usda.gov/data/MFH.html  (last visited August 29, 2022).
[9] USDA Rural Development Datasets, Multi-Family Section 514 and 515 Management, "Active Projects – Comprehensive" (8/17/2022), https://www.sc.egov.usda.gov/data/MFH_section_515.html (last visited August 29, 2022).

43.

Later in the meeting, the Mayor again asked, "is that what we want in St. Francisville is more apartments?"[10]

44.

The Mayor said when he has conversations with others, it has always been "no more apartments."[11]

45.

When Mr. Sanchez asked what the Mayor envisioned for the Property, the Mayor suggested "more" of what Discovery already developed on the Property.[12] It is obvious that the Mayor was referring to the Reserve, described above.

46.

The Mayor also attempted to harm Mr. Sanchez personally as a way to stop the Development. The Mayor approached leaders of the Foundation and the St. Francisville Bank (the "Bank") board president to have Mr. Sanchez removed from both boards.

47.

The Mayor threatened to withhold his approval of a grant the Foundation received if Mr. Sanchez was not removed. The grant would be used to create trails and walking paths in the Town, and the Mayor planned to enact an ordinance to prevent the construction of such walking paths if Mr. Sanchez was not ousted.

---

[10] Exhibit I, 19-20.
[11] Exhibit I, 20-21:45.
[12] Exhibit I, 24:30.

PD.39719873.1

48.

The Town Attorney Ben Klein also informed counsel for Discovery that if Discovery challenged the Moratorium in court, Discovery would never construct another structure in the Town.

**The CZO Changes**

49.

On February 8, 2022, the Town passed sweeping changes to the CZO aimed at preventing the Development from moving forward. Namely, the 2022 Changes prevent the construction of residential structures in CH, and such uses were allowed prior to the revision.

50.

Prior to the enactment in 2022, the Town held several public meetings regarding the amendments. One citizen who spoke in favor of the changes testified that "people" wanted to move to Town to "feel safe," and that apartments would "disrupt that feeling." Others discussed how the Town would turn into Zachary or Denham Springs—two municipalities that have become more diverse over the past two decades.

51.

At the same public hearings, Discovery opposed the modifications to the CZO because the 2022 Changes would eliminate the possibility for the Development to move forward. Mr. Sanchez and counsel for Discovery spoke against the 2022 Changes and identified the harm that would result not only to Discovery but also to the larger community.

52.

The 2022 Changes revised the approved uses for certain districts. Residential uses in CH were no longer allowed, eliminating the possibility of the Development going forward.

53.

In light of the Mayor's statements on July 22, 2021, Discovery suspects that one of the goals of the 2022 Changes was to foreclose development or continued planning of the Development.[13]

54.

Based on a review of the official zoning map of the Town, multifamily dwellings (i.e., apartment complexes) are significantly restricted to certain portions of the Town and largely be prohibited along U.S. Highway 61, the federally funded four-lane highway that cuts through the Town. A copy of the zoning map for the Town is attached hereto as **Exhibit H.**

55.

Based on the 2022 Changes, only two buildings in the proposed Development would be located in RM-1. The remainder of the proposed Development, which is located in CH, could not be developed as a multifamily community.

56.

The 2022 Changes also expanded approved uses in the Town's historic district, including increasing permissible density and building height, which is arbitrary in light of the severe restrictions placed on areas outside of the historic district.

**Demographics of the Metropolitan Statistical Area and Town**

57.

The Parish, Town, and Property are located in the Baton Rouge Metropolitan Statistical Area (the "BR MSA").

---

[13] Through a public records request, Discovery obtained records that evidence an intent to stop multifamily dwellings in CH. See **Exhibits F-G**.

PD.39719873.1

58.

According to the 2020 Census data, 870,569 people live in the BR MSA, with 476,248 white residents (54.7%) and 302,477 Black residents (34.7%).[14]

59.

According to the American Community Survey ("ACS") performed by the U.S. Census Bureau, there are approximately 305,441 occupied housing units in the BR MSA of which 212,886 are "owner-occupied housing units" and 92,555 are "renter-occupied housing units." Only 24.5% of owner-occupied housing units are occupied by Black residents in the BR MSA. In contrast, 53.4% of renter-occupied housing units are occupied by Black residents.[15]

60.

According to the 2020 Census, 1,557 people live in the Town. Approximately 70% of the Town residents are white and 22% are Black.[16] According to the 2020 Census data, the Black population fell by over 50% and the white population increased by 32%.

61.

According to the ACS, there are approximately 746 occupied housing units in the Town of which 325 are owner-occupied. Approximately 86.2% of owner-occupied housing units are occupied by white residents, while only 13.8% of owner-occupied housing units are occupied by Black residents. Zero owner-occupied housing units are occupied by Latino or Hispanic residents.

---

[14] U.S. Census Bureau, Decennial Census (2020) https://data.census.gov/cedsci/table?t=Populations%20and%20People%3ARace%20and%20Ethnicity&g=310XX00 US12940&y=2020.

[15] U.S. Census Bureau, American Community Survey (2019) https://data.census.gov/cedsci/table?t=Owner%2FRenter%20%28Householder%29%20Characteristics&g=310XX0 0US12940&tid=ACSST1Y2019.S2502&moe=false.

[16] U.S. Census Bureau, Decennial Census (2020) https://data.census.gov/cedsci/table?g=1600000US2267215&tid=DECENNIALPL2020.P1.

Black residents occupy more than half of the renter-occupied housing units in the Town and 2.9% of such units are occupied by Latino or Hispanic residents.[17]

62.

Based on the number of units in a structure, Black, Hispanic, and Latino Town residents are more likely to live in a structure with three or more units:

| Race | Occupied Housing Units in Structure with More than Three Units[18] | Percentage of Total Occupied Units Based on Race |
|---|---|---|
| White[19] | 87 | 18% |
| Black[20] | 163 | 64% |
| Hispanic or Latino[21] | 12 | 100% |

---

[17] U.S. Census Bureau, American Community Survey (2020) https://data.census.gov/cedsci/table?g=1600000US2267215&tid=ACSST5Y2020.S2502.

[18] The West Feliciana Comprehensive Plan, defines multi-family housing as a structure with three or more units.

[19] U.S. Census Bureau, American Community Survey (2020) Table B25032H, https://data.census.gov/cedsci/table?t=Units%20and%20Stories%20in%20Structure&g=1600000US2267215&tid=ACSDT5Y2020.B25032H

[20] U.S. Census Bureau, American Community Survey (2020) Table B25032B, https://data.census.gov/cedsci/table?t=Units%20and%20Stories%20in%20Structure&g=1600000US2267215&tid=ACSDT5Y2020.B25032B

[21] U.S. Census Bureau, American Community Survey (2020) Table B25032I https://data.census.gov/cedsci/table?t=Units%20and%20Stories%20in%20Structure&g=1600000US2267215&tid=ACSDT5Y2020.B25032I.

PD.39719873.1

## COUNT I: THE FAIR HOUSING ACT

63.

Discovery incorporates Paragraphs 1-62 as if copied here *in extenso*.

64.

The Fair Housing Act ("FHA") addresses discrimination in housing. Pursuant to the FHA, it is unlawful to refuse to sell or rent or "otherwise make unavailable" a dwelling to any person because of race, religion, sex, familial status, handicap, or national origin. 42 U.S.C. 3601, *et. seq.*

65.

The phrase "otherwise make unavailable" has been interpreted to reach a wide variety of discriminatory housing practices, including discriminatory zoning restrictions. The FHA's prohibition on discriminatory practices in housing includes zoning laws and other housing restrictions that function unfairly to exclude minorities from certain neighborhoods without any sufficient justification.

66.

Private developers, such as Discovery, are allowed to vindicate the FHA's objectives and to protect their property rights by stopping municipalities from enforcing arbitrary and, in practice, discriminatory ordinances barring the construction of certain types of housing units.

67.

The FHA provides for both disparate impact and discriminatory intent liability.

### Disparate Impact

68.

Disparate impact liability mandates the removal of artificial, arbitrary, and unnecessary barriers that perpetuate segregation.

69.

Here, Ordinance 2022-1 violates the FHA by essentially eliminating the possibility for any multifamily apartment developments in the Town to the detriment of persons more likely to seek out such housing accommodations.

70.

Ordinance 2022-1 will perpetuate segregation in the BR MSA and will establish artificial, arbitrary, and unnecessary barriers to protected classes seeking to move to the Town.

71.

Ordinance 2022-1 will have a substantial, disparate impact on persons protected by the FHA, including Black, Hispanic, and Latino individuals and families who desire to live in the Town:

     a.  53.4% of Black households in the BR MSA live in renter-occupied housing units;

     b.  40.6% of white households in the BR MSA live in renter-occupied housing units;

     c.  Black households are 31.5% more likely to live in renter-occupied housing units. Put another way, Black households in the BR MSA are approximately 1.3 times more likely to live in renter-occupied structures.

72.

Ordinance 2022-1's disparate impact is even greater when limited to the Town and to structures with 3 or more units. In the Town, Black households are approximately 3.5 times more likely to live in structures with 3 or more units and Hispanics and Latinos are approximately 5.8 times more likely to live in structures with 3 or more units.

73.

Ordinance 2022-1, which limits the availability of multifamily dwellings will predictably cause a discriminatory effect on protected classes of people: African Americans, Hispanics, Latinos, families, and persons with disabilities.

74.

Ordinance 2022-1 serves no legitimate, substantial, nondiscriminatory interests of the Town.

75.

To the extent the Town does have such interests, which is denied by Discovery, such interests can be met with less discriminatory impacts.

**Discriminatory Intent**

76.

Further, indicia of discriminatory intent exist.

77.

As set forth in Paragraph 41 above, the Mayor referenced attracting "the people we want in St. Francisville" while mentioning an apartment complex in Town with a large minority population – an apartment complex referred to as the "Hood" on Google. The Mayor's concern with attracting the right "people" is racially loaded and "camouflaged racial expression."

78.

In the July 22, 2021 meeting the  Mayor also expressed concern that while the Development "is going to look very nice the first few years," the Development will deteriorate over time, which is also racially loaded and "camouflaged racial expression." *Greater New Orleans Fair Housing Action Center v. St. Bernard Parish*, 41 F.Supp.2d 563, 568 (E.D. La. March 25, 2009).

79.

A citizen's statement at a public hearing about wanting to "feel safe" appeals to racial as well as class prejudice.

80.

A citizen's statement at a public hearing about the Town becoming more like Denham Springs and Zachary (both of which have become more ethnically diverse) suggests a clear desire to limit housing in the Town to a certain subset of Louisiana citizens.

81.

The Parish's history is also important here. The Parish has a history of racial animus towards minorities who desire to live there. According to Rosia Pate, a Parish citizen interviewed for the West Feliciana African American Oral History Project, "these [white] people here did NOT want to sell Black people no land."[22]

82.

The specific series of events leading to Ordinance 2022-1 are also suspicious and were focused on stopping the Development from moving forward. The Mayor explicitly stated that he questioned apartments because of what that brings and whether it is the type of people "we want in St. Francisville." Exhibit I. The Mayor also sought Mr. Sanchez's removal from various boards and the Town Attorney threatened further actions if Discovery instituted litigation against the Town.

83.

These actions were procedural and substantive departures from the ordinary course of business in order to stop the Development.

---

[22] Louisiana Folklife, https://www.louisianafolklife.org/LT/Articles_Essays/WestFeliciana9.html#page9 (Last visited 3/9/2022).

PD.39719873.1

**Relief Sought**

84.

Discovery seeks to construct the Development on its Property.

85.

Discovery requests a preliminary and permanent injunction to enjoin the enforcement of Ordinance 2022-1. Furthermore, in light of the proposed changes to the CZO published by the Defendants in July 2022, Discovery further requests a preliminary injunction enjoining any further changes to the CZO without this Court's approval.

86.

Discovery further requests a preliminary and permanent injunction to enjoin the Town from interfering with its plans to develop its Property for the purpose of constructing the Development.

87.

Discovery further requests that this Court order the Town and Mayor to issue all permits necessary for the construction of the Development and provide all information requested by the U.S. Department of Housing and Urban Development so that Discovery can apply for financing available pursuant to federal law.

88.

Discovery also seeks damages due to the Town and the Mayor's interference with its plans to construct the Development.

89.

Discovery also requests attorney's fees and costs pursuant to 42 USC sec. 3613(c)(2).

- 20 -

## COUNT II: UNCONSTITUTIONAL TAKING

90.

Discovery incorporates Paragraphs 1-89 as if copied here *in extenso*.

91.

To the extent the Court does not grant relief to Discovery pursuant to the FHA, the actions of the Defendants amount to a taking of Discovery's Property without just compensation.

92.

The Takings Clause, applicable to state actors via the Fourteenth Amendment, provides that private property cannot be taken for a public use without just compensation.

93.

Discovery purchased the Property with the express intention of constructing the Development.

94.

Although the Property could be used for commercial purposes, the Town does not have any need for additional commercial space, and as such, Discovery has been deprived of all economically beneficial use for the Property. Therefore, Ordinance 2022-1 is a *per se* taking.

95.

Assuming arguendo the 2022 Changes to the CZO do not constitute a *per se* taking, the economic impact on Discovery is significant as the market value of the Property is diminished. Further, Discovery had distinct, investment-backed expectations of constructing the Development. Finally, the nature of the Town's action was to prohibit multifamily developments, which specifically burdens Discovery.

96.

Because Defendants' actions constitute a taking, Discovery is entitled to just compensation.

## PRAYER

**WHEREFORE**, Discovery Real Estate and Development, LLC prays that, after all due proceedings are had, judgment be entered in its favor and against the Defendants awarding the following relief:

1. A temporary restraining order enjoining the enforcement of Ordinance 2022-1 and the enactment of any further modifications to the CZO without this Court's approval'

2. A preliminary and permanent injunction enjoining the enforcement of Ordinance 2022-1 and the enactment of any further modifications to the CZO without this Court's approval;

3. An order commanding the Defendants to cooperate with Discovery, issue any and all necessary permits for the Development, and to provide any and all information requested by HUD for the financing of the construction of the Development;

4. Monetary damages owed as a result of Defendants' actions;

5. Attorney's fees and costs; and

6. All other relief appropriate under the facts at issue herein.

[*Signature Block on Next Page.*]

- 22 -

Respectfully submitted,

**PHELPS DUNBAR LLP**


BY:    */s/ Shelton Dennis Blunt*

Shelton Dennis Blunt, Bar Roll No. 21230
Monica M. Vela-Vick, Bar Roll No. 34803
Anthony J. Gambino, Jr., Bar Roll No.  37129
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: 225 346 0285
Facsimile: 225 381 9197
Email: dennis.blunt@phelps.com
Email: monica.vela-vick@phelps.com
Email: anthony.gambino@phelps.com


ATTORNEYS FOR PLAINTIFF DISCOVERY REAL
ESTATE AND DEVELOPMENT, LLC


**PLEASE SERVE:**

**Town of St. Francisville**
Through Mayor Robert "Bobee" Leake
11936 Ferdinand Street
St. Francisville, Louisiana 70775

**Mayor Robert "Bobee" Leake**
11936 Ferdinand Street
St. Francisville, Louisiana 70775

- 23 -

## VERIFICATION

I, Scott Sanchez, hereby state that I have read the foregoing Verified Complaint for Temporary Restraining Order, Preliminary and Permanent Injunction, and Damages, that I am authorized to make this Verification on behalf of Discovery Real Estate and Development, LLC, and that the allegations in the Complaint are true based on personal knowledge or information available to me which I believe to be true to the best of my knowledge, information, and belief. This statement is made subject to the penalties of 28 U.S.C. sec. 1746 relating to unsworn declarations under the penalty of perjury.

Executed on August 30, 2022

_Scott Sanchez_
Scott Sanchez